Good morning, Your Honors. May it please the Court, Melanie Evanesyan, student at Southwestern Law School, under the supervision of Caleb Mason, pro bono amicus, on behalf of the petitioner Nerea Vando Cruz, by appointment of this Court. If I may, I would like to reserve one minute for rebuttal. Ms. Cruz is the mother of two U.S. citizen children. She applied for cancellation of her children if she were deported. The I.J. granted the relief based on specific factual findings about each child. The I.J. found that Cruz's daughter would not be able to attend school at all in Mexico because she would have to work full-time, and that Cruz's son would not receive the remedial speech therapy he needs in Mexico because Cruz would be unable to pay for it. The issue presented by this case is whether those two questions, whether the daughter would be able to attend school, and whether the son would get the therapy he needs, are questions of law or questions of fact. Your Honors, they are questions of fact, and as the dissenting board member argued, the BIA violated 8 CFR 1003.1 when it reviewed those findings de novo. The government argues that the BIA, in its decision, merely reviewed the I.J.'s legal conclusions. However, the BIA's opinion explicitly reviewed the I.J.'s factual findings. The only issue this Court must determine is whether the points on which the BIA reversed the I.J. were questions of fact or questions of law. In its decision, the BIA did not accept as fact the decision regarding Cruz's daughter. Instead, the board, in its decision, said, quote, the record does not support the conclusion that the respondent's daughter, even if compelled to work to support the family, would be denied the opportunity to complete the one year of school necessary to obtain her high school diploma. Your Honors, this is purely a factual statement. The government concedes in its brief that the BIA was engaging in de novo review. The BIA's authority under 8 CFR 1003.1 to engage in de novo review is limited to questions of law. The plain language of the regulation prohibits making de novo factual findings. If the BIA was merely reviewing questions of law, as the government claims it was, its opinion would look something like the following. Accepting as true the I.J.'s factual conclusion that Cruz's daughter would not be able to attend school in Mexico, we hold that this would not meet the relevant legal standard. But that's not the opinion in this case. It is the I.J.'s factual finding that Cruz's daughter would not be able to attend school at all with which the BIA took issue, not the legal standard. The BIA never suggests that the I.J. got the law wrong. It clearly says that the I.J. got the facts wrong. Also, with respect to Cruz's son, the board rejected the I.J.'s factual finding that he would not get the therapy he needed in Mexico because Cruz would be unable to pay for it. The board reversed that finding and held that, quote, the record does not support the immigration judge's conclusion that Cruz's now six-year-old son has a learning disability of such severity that it could not be addressed in Mexico's school system. The board's holding expressly states that a factual finding made by the I.J. was not supported by the record. The BIA may only engage in factual review for clear error, which the government has conceded the BIA did not do. If the BIA was reviewing questions of law as the government claims it was, its opinion would look something like the following. We accept the I.J.'s fact finding about Respondent's son and his situation here and likely situation in Mexico. However, the hardship alleged is insufficient as a matter of law to support the relief. However, Your Honors, that is not the opinion the BIA wrote. The board did not accept the I.J.'s factual findings. It reviewed and rejected them. In fact, the BIA applied the same legal rule to a different set of facts. The issues here are questions of fact, not law. Because the board reviewed the I.J.'s factual findings under a de novo standard rather than a clear error standard, the board's decision should be vacated and the case remanded to the BIA. There was a dissent in this case? Yes, there was, Your Honor. And what was the basis of that? The basis was exactly what we, I just argued before. The dissent agrees that the BIA reviewed factual findings, which they are not allowed to do, and also stated, quote, if an immigration judge has come to factual conclusions which, on the face of the record, are not clearly erroneous, those factual conclusions serve as a boundary under which we operate in our capacity as an appellate reviewing body. Thank you. Sounds like a pretty strong argument. Well, Your Honor, if the factual findings that Ms. Evanesian states were made were made, then this would be a different case from what it is. But the question before this Court that really must be decided is, did the immigration judge make these findings suggested by Amicus in the brief and in the argument this morning? We submit that the IJ did not make those findings, as a matter of fact, and that the board also did not make findings, as a matter of fact. Now, what findings did the IJ make? Well, with respect to the son, Edgar, Edgar suffers from a learning disability regarding his ability to speak, and he's receiving services for that from the Anaheim School District. The immigration judge also said that's a compelling special need, and the immigration judge also found that Ms. Cruz does not have the financial means to provide the special educational services in Mexico at her own expense. Now, the board precedent says that the standard to be applied is, in determining whether or not a qualifying relative can be a basis for a claim of cancellation on the basis of educational needs, is that the qualifying relative has to, the applicant has to show that the qualifying relative would be deprived of all schooling or an opportunity to attend college. Now, the board precedent says that the standard to be applied is, in determining whether or not a qualifying relative can be a basis for a claim of cancellation on the basis of educational needs, and the board precedent says that the qualifying relatives are not supported by citations to the immigration judge's decision. Well, let's look at the immigration judge's decision. To the daughter, they're on page 10. And they're all in terms of facts. His findings are that the record's distinguishable from the facts in Anzaloza, and then explains why the facts here distinguish the facts, and that Nealy would go to work full-time if she had to return to Mexico to help support her mother. Now, are those facts? Do you disagree with those facts? No, Your Honor, we don't. But the facts are different from what the amicus alleges them to be. Well, I simply asked you to tell me what the IJ found. Yes, Your Honor. And I think Judge Reinhart has helped you out there. Yes, well, the facts according to the way that I read the IJ decision are with regard to the daughter are these. She's doing well in high school. She's acculturated in the United States. She has limited speaking and writing ability in Spanish. The death of her father when she was 11 affected her. She would go to work full-time if she had to return to Mexico to support her mother and brother. And the IJ said she didn't doubt this at all. Those are the factual findings. The Board did not disagree with any of those facts. Well, basically the inference that the IJ clearly drew was that if she had to go to work full-time, she would not be able to also attend school full-time. And the BIA characterized that situation as diminished educational opportunities. That is not how the IJ not expressly that by finding, making a legal conclusion based on that exceptional circumstances. And by inference from what he says, he's obviously saying the fact that she has to work full-time in Mexico would eliminate her opportunity to go to school, not diminish it. Yes, Your Honor. The Board did apply the legal standard to ask whether or not the record supported the conclusion that the standard set forth in Andazola was satisfied here. But the Board did this, let me suggest, because rather than examining the immigration judge's ruling for clear error, because the immigration judge actually made no finding of fact on that. The Board's decision is a bit obscure in how it analyzed the case. The Board's decision, it strikes me, doesn't comply with the requirements of its own regulation in making it clear that it's reviewing the IJ's decision under the clearly erroneous standard. Correct, Your Honor. And let me suggest that that might be because if the Court concludes that in fact the IJ made the findings as set forth by amicus, then it would be appropriate for the case to be remanded to the Board for the Board to reassess the case in light of the clear error standard. However... Why wouldn't you just grant the petition? I mean, when we make a legal error, the Supreme Court reverses us. Why wouldn't we just grant the petition? Well, Your Honor, if there was an error, though, then the Board needs to go forward and assess whether there's clear error. The error is in making its own factual findings based on the record, as opposed to reviewing the IJ's factual findings for whether or not there's support in the record or whether there was clear error. And obviously the IJ found that the testimony was credible and reviewed a number of documents and records that support the findings the IJ made, as the dissent points out. And so since we apply the clear error standard properly, we would have to say there's no clear error. Your Honor, that's a matter, though, for the Board to address. Well, Your Honor, I don't think so. This isn't a Ventura-type situation. Well, Your Honor, the interpretation and application of the regulations is the sort of thing that is committed to the agency in the first instance. Well, they can't violate their own regulations. Well, if the Court concludes that the Board did violate its own regulations here, the appropriate thing to do, and as Amicus's argument, is to remand the case to permit the Board to then assess the findings under a clear error standard. But our submission is that those findings weren't made. I mean, just to kind of ---- I don't understand why you think there weren't any findings. Do you think they would be made if the IJ had gone on to say, I find that if she works full-time, she can't also go to school and obtain the last year's credit? Your Honor, if she said, I find that she would not be able to go to school, then that would be a finding. And certainly that would be reviewed for clear error. Whether or not the reason is that they couldn't afford to live in Mexico without additional support, if there was a finding by the IJ that she won't be able to complete her education, then that would be reviewed for clear error. That would have been a factual finding. That's right. Your argument really is that although the IJ said she'd have to work full-time, she should have said what I suppose is not only a reasonable inference, but maybe a necessary inference, that if you're doing one thing full-time, you can't do another. Well, Your Honor, it's important, though, to take into account that it is possible that she could complete her education, whether or not it's full-time, while working, or even that she would complete her education and then begin to work. That's not really consistent with the fact finding. She said she'd have to go to school, work full-time to support the family. Well, you can't say, well, the family can starve to death for a year and then she can go to work. I mean, that seems to be clear, that she has to work full-time. That's the factual finding, not a year from now or two years, but now she has to work full-time. And it's true that the next sentence wasn't added as a finding, although it seems to me it's a necessary implication, that while working full-time, she couldn't also be in school. But that's what you say is missing, because you would agree with our argument if that sentence had been added. If that sentence had been added, then the board would have to review that finding for clear error. But there's no finding on that. Now, with respect to Edgar, the amicus brief urges that the immigration judge concluded that Edgar would not be able to obtain schooling in Mexico because his disability is simply the sort of thing that cannot be accounted for. There was no information upon which the immigration judge could rest that sort of a conclusion, and there was no such conclusion made. The immigration judge said, this cruise does not have the financial means to pay for such services. But there's no information at all in the record about what kind of services were available. And the board said that the record does not support this conclusion. Now, I'm not suggesting that the board made a finding on that. I don't think the board did. When the board says the record doesn't support a conclusion, I think what it's pointing out is a failure of proof. And so the fact is that the board analyzed the case from the standpoint of, you know, what were the findings made and whether there was adequate proof. That's how DHS presented the case. DHS said in its brief that he did not present evidence that Edgar could not receive any schooling. In fact, it said that on the second page of the brief, it said it twice. The respondent did not submit evidence that Edgar would be deprived of all schooling. And the immigration judge never made a finding on that point. So there wasn't any review for clear error of that issue, because the immigration judge never made a finding on that. Now, when you read the Amicus brief, there's assertion after assertion after assertion that the immigration judge never made findings that, in fact, there is no support in the record for those assertions. I'll go through a few of them. Page 4. I think your time is way over, counsel. I'm sorry, Your Honor. For the reasons that I've given, plus the reasons in our brief, I ask the Court to deny the petition. Thank you, counsel. Thank you. Your Honors, the BIA said that Cruz's daughter would not be able to go to school. And as you've already read, the decision in the IJ's decision regarding the daughter, it specifically says that Cruz's daughter, quote, the Court does not doubt that Nayeli would go to work full time if she had to return to Mexico to help support her family. The immigration judge drew these reasonable inferences based on testimony both by Ms. Cruz and both by her daughter.
judges: Fletcher B. , Reinhardt, Wardlaw